*Alricks and Kunkel, for plaintiff.*

*Parke and Fox, for defendant.*

------

*Court of Common Pleas, Dauphin County, December 15th,* 1851.

MUMMA *v.* THE HARRISBURG, PORTSMOUTH, MOUNT JOY AND LANCASTER RAILROAD COMPANY.

When a turnpike company, having merely the right of way over land, laid railway tracks along the line of its road, it is liable for damages to the owner of the land. Even if the claimant had given a release of damages to the turnpike company, it would still be liable on changing a road that could be used by the whole neighborhood into one merely beneficial to the company. The claimant should be allowed for the future damages to his property that would result from the ordinary use of the railroad; the company would then be liable only for gross carelessness.

BY THE COURT.—Numerous exceptions have been filed to the report of the inquest in this case, embracing in substance the following positions: 1st. The complainant did not show that he applied to the company for damages before presenting his petition to the court. 2d. That he was not entitled to any compensation for the land occupied, as it had been previously dedicated to public use, and this company possessed all the rights of the prior turnpike road company. 3d. The petitioner, not being the owner of the said land, is not authorized by law to apply for damages. 4th. The inquest allowed for consequential injuries, which may never occur, and for which the company would be still answerable, should any happen. By Sect. 4, Art. 7 of the Constitution (of

[Mumma v. Harrisburg, Portsmouth, Mount Joy and Lancaster Railroad Co.]

1838), it is provided, that, "The legislature shall not invest any corporate body or individual with the power of taking private property for public use, without requiring such corporation or individual to make compensation to the owner of said property, or give adequate security therefor, before such property is taken." The act under which this railroad company derives its power to enter upon the premises of the petitioner and make the road, was passed since that provision was inserted; of course we are to suppose that the legislature made the grant, and the company accepted it in subserviency to this provision.

A mode is pointed out in the charter for assessing the damages, which from its terms looks rather to the action of the company than the individual. The act provides, "That when the said company cannot agree with the owner or owners of such required land for the purchase thereof, or where the owner is unable to sell, either party may apply to the Court of Common Pleas to appoint an inquest"—clearly implying that the company, not the individual, should become the actor in endeavoring to arrange the damages amicably.

Although this law was passed before the change in the Constitution, yet, as the present power to take the petitioner's property was conferred since, the fair interpretation of that law, in subordination to the Constitution, throws the whole burden of an application for an amicable arrangement upon the company before taking the petitioner's property. We consider that to be the proper interpretation of the law, independent of the Constitution. At most, the failure to make such application could only affect the question of costs.

Although the public, by the action of the turnpike company, had a right of way over the petitioner's land, the title thereto remained in him. The soil could not even have been temporarily appropriated for that purpose under the amended Constitution without compensation, nor has it been attempted in the present case. Damages had to be paid by the turnpike company for the use of the land. In the present case it is to be presumed that none was sustained, as damages do not appear to have been asked for or paid. But the legislature was well aware that roads, which might be highly beneficial to the owners of property, when used by the constructors for the same mode of travel as that ordinarily practiced by the neighborhood, would be extremely inconvenient and deleterious, when so changed as to preclude the use by any one except the company, as is uniformly the case with railroads. Therefore, when the turnpike company was authorized to lay rails on the track of its road, provision was made for assessing damages in the same mode prescribed for the Reading Railroad Company. Act of April 4th, 1837, Section 8. If a doubt might exist as to the application of that section to the present com-

[Mumma *v.* Harrisburg, Portsmouth, Mount Joy and Lancaster Railroad Co.]

pany, the provisions of the 2d section clearly bring it within the act authorizing the construction of a railroad from Portsmouth to Lancaster; when the property of this road was purchased by the H. & L. R.R. Co., it was taken subject to, and under the provisions of the act granting its original corporate character; the 79th and 80th sections of which provide for the assessment of damages. Even if a release of damages had been given by the petitioner to the turnpike company, it would not have precluded him from claiming, when the whole object of the road was changed; when that which was previously profitable and beneficial, had become by a change of structure highly dangerous and hurtful. He could no more be held bound by the license, than could an individual who had given permission to erect a dwelling-house on his premises, be afterwards precluded from objecting to the construction of a smelting-house or a tannery. Here no release is pretended; and the petitioner is entitled to recover damages for the use of his property by the respondents, although the right of way is vested in the turnpike company. The opinion of the Supreme Court in Mifflin *v.* The H. & L. R.R. Co. (4 H. 182), applies fully to this case and is decisive of it. That decision meets my entire concurrence, and even if it did not, it is binding on our action. The jury was right in taking into account the probable consequence to the petitioner's buildings, and the necessity of changing or removing them. The decision in the P. & R. R.R. Co. *v.* Yeiser (8 Barr, 364) is directly in point. There is no substantial variance between the words of the act under which that decision was made, and the one under which the present jury acted. If damages occurred to the house or barn of the petitioner by the ordinary use of this road, without carelessness on the part of the company or its agents, there would be no responsibility. Such chances are presumed to be taken into view in assessing the damages. There could probably be no fairer mode for both parties, than to estimate the cost of removing the barn and slating the house. It could scarcely be expected that the owner would risk his harvest in the one, or his family in the other, in their present unprotected state.

The objection has failed in all of the exceptions; therefore, the verdict rendered by the jury is affirmed.

AFFIRMED BY THE SUPREME COURT, July 20th, 1852. Not reported.

*Alricks and Kunkel, for plaintiff.*

*Parke and Fox, for defendant.*